UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and ARTHUR H. BUNTE, JR., as Trustee, Plaintiffs, v. INFRASOURCE CONSTRUCTION, LLC, Defendant. | 13 C 9048<br>Judge George M. Marovich |

## MEMORANDUM OPINION AND ORDER

Defendant is an employer who contributed to plaintiff pension fund pursuant to a collective bargaining agreement that expired on May 31, 2012. The replacement collective bargaining agreement required defendant to contribute to a different pension fund instead. Plaintiff, however, thinks defendant should contribute to its plan for some period of time after June 1, 2012, because defendant did not notify it soon enough about the existence of the new collective bargaining agreement. Everyone agrees that if the Court rules for plaintiff, defendants will be making double contributions (one contribution to each plan for each employee) and that the employees will earn double pension credits (one set under each plan). Everyone agrees that if the Court rules in defendant's favor, Central States will neither collect contributions nor pay pension benefits based on the time period after June 1, 2012.

Plaintiffs Central States Southeast and Southwest Areas Pension Fund ("Central States Pension Fund") and its Trustee Arthur H. Bunte, Jr. (the "Trustee") filed suit against defendant Infrasource Construction, LLC ("Infrasource"). (The Court refers to plaintiffs, collectively, as "Central States.") Plaintiffs seek relief under §515 of the Employee Retirement Income Security

Act ("ERISA"), 29 U.S.C. § 1145. The parties have filed cross motions for summary judgment. For the reasons set forth below, the Court grants defendant's motion for summary judgment and denies plaintiffs' motion for summary judgment.

I.  **Background**

The following facts are undisputed unless otherwise noted.

Central States Pension Fund is a multi-employer pension fund governed by ERISA. It accepts pension contributions from employers who have entered collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("Teamsters"). All of the contributions (and income produced therefrom) are used either to pay pension benefits under its plan to participants and beneficiaries or to pay its administrative expenses.

Sometimes, the local unions negotiate not directly with employers but with associations representing employers. In this case, for example, the Teamsters negotiated collective bargaining agreements with the Pipe Line Contractors Association, a group that, among other things, negotiates collective bargaining agreements on behalf of member employers. Defendant Infrasource (a contractor that handles pipeline work) is a member of the Pipe Line Contractors Association.

In February 2006, the Pipe Line Contractors Association and the Teamsters entered a collective bargaining agreement (the "2005 Pipeline CBA"), which had an effective date of November 1, 2005. Infrasource did not sign on to the 2005 Pipeline CBA at the beginning. Infrasource adopted the 2005 Pipeline CBA on July 20, 2009, when it signed an agreement (the "2005 Participation Agreement") to participate in the 2005 Pipeline CBA. By signing the 2005

Participation Agreement, Infrasource also consented to most aspects of Central State's Trust Agreement. Specifically, the 2005 Participation Agreement stated, among other things:

> NOW, THEREFORE, IT IS AGREED by and between the undersigned Employer and the International Brotherhood of Teamsters that such *Employer hereby subscribes to the various agreements and declarations of trust and policies and procedures of the particular funds* into which such Employer will be required to make contributions pursuant to the [2005 Pipeline CBA], *and agrees to be bound thereby* and to amendments made or to be made thereto; and authorizes the parties to such trust agreements to name the trustees and successor trustees, and to administer the trusts; and does hereby ratify and accept such trustees and the terms and conditions of said trusts as fully and as completely as if made by said undersigned Employer; *provided, however, that no amendments or provisions of said trust agreements shall bind the Employer for any financial obligations* or dues delinquency determinations *beyond that set forth in the [2005 Pipeline CBA]* pursuant to which such contributions are made.

(2005 Participation Agreement) (emphasis added).

The Trust Agreement, in turn, provides:

> **Amount of Contributions**--*Each Employer shall remit continuing and prompt contributions to the Trust Fund as required by the applicable collective bargaining agreement to which the Employer is a party*, applicable law and all rules and requirements for participation by Employers in the Fund as established and interpreted by the Trustees in accordance with their authority . . . Upon execution of each new or successive collective bargaining agreement, including but not limited to interim agreements and memoranda of understanding between the parties, each Employer shall promptly submit such contract by certified mail to the:
>
> > Contracts Department
> > Central States, Southeast and
> > Southwest Areas Pension Fund
> > 9377 West Higgins Road
> > Rosemont, Illinois 60018-4938
>
> Any agreement or understanding between the parties that in any way alters or affects the Employer's contribution obligation as set forth in the collective bargaining agreement shall be submitted promptly to the Fund in the same manner as the collective bargaining agreement; any such agreement or understanding between the parties that has not been disclosed to the Fund as required by this paragraph shall not be binding on the Trustees and shall not affect

> the terms of the collective bargaining agreement which alone shall be enforceable. Except as provided in this Section, Section 7(b) of Article III and Section 20 of Article IV, *the obligation to make such contributions shall continue* (and cannot be retroactively reduced or eliminated) *after termination of the collective bargaining agreement until the date the Fund receives a) a signed contract that eliminates or reduces the duty to contribute to the Fund* or b) written notification that the Employer has lawfully implemented a proposal to withdraw from the Fund or reduce its contributions at the above specified address. The obligation to make such contributions shall continue during periods when the collective bargaining agreement is being negotiated, but such contributions shall not be required in case of strike after contract termination, unless the parties mutually agree otherwise.

(Trust Agreement at 7-8) (emphasis added).

The 2005 Pipeline CBA, itself, required employers to make certain pension contributions for certain employees. The 2005 Pipeline CBA classified employees as Travelers and Non-Travelers, but only the Travelers are relevant to this case. The 2005 Pipeline CBA states:

> Fringe Benefit contributions under this Agreement shall be paid for all hours worked. All pension and welfare contributions for Travelers will be remitted to the Central States, Southeast and Southwest Areas Health and Welfare and Pension Funds.

2005 Pipeline CBA at Section V(I)(a).

By its terms, the 2005 Pipeline CBA "continue[d] in full force and effect until January 31, 2011, and thereafter from year to year unless terminated at the option of each party after sixty (60) days' notice in writing to the other." (2005 Pipeline CBA at Section XV(C)). The Teamsters and the Pipe Line Contractors Association agreed to a series of extensions. The first extension was agreed to on November 15, 2011. The next day, counsel for the Pipe Line Contractors Association sent a letter to Central States which stated, among other things, "Also enclosed is a copy of the current CBA and a fully executed Amendment to and Extension of the CBA. As you will see, the Amendment clearly and formally memorializes the Parties agreement

to terminate any obligation to contribute to the Plan." After that, the Pipe Line Contractors Association and the Teamsters continued to extend the 2005 Pipeline CBA. The final extension extended the 2005 Pipeline CBA through June 2012. In the meantime, the Pipe Line Contractors Association and the Teamsters were negotiating a new collective bargaining agreement.

On May 31, 2012, the Pipe Line Contractors Association and the Teamsters executed a new collective bargaining agreement (the "2012 Pipeline CBA"), effective January 1, 2012. Like the 2005 Pipeline CBA before it, the 2012 Pipeline CBA classified employees as either Travelers or Non-travelers and required employers to make certain pension and welfare contributions. Specifically, the 2012 Pipeline CBA stated:

> (a) Fringe benefit contributions under this Agreement shall be paid for all hours worked. All welfare contributions for Travelers will be remitted to the Central States Southeast and Southwest Areas Health and Welfare Fund. . . . Except as stated in (aa) below, . . . all pension contributions on behalf of the Travelers, shall be made to the Teamsters National Pipeline Pension Fund, a multi-employer Taft-Hartley pension fund, governed by a Trust document and Plan Documents agreed to by the parties as settlers. Contributions to the Teamsters National Pipeline Pension Fund shall include (1) all contributions made to any escrow account pursuant to the agreement, dated November 15, 2011, extending the *Amendment To and Extension of Collective Bargaining Agreement Between Pipe Line Contractor Association and the International Brotherhood of Teamsters* ("the *Amendment*") until December 31, 2011; (2) all contributions made to any escrow account pursuant to the agreement dated January 12, 2012, extending the *Amendment* from January 12 until April 13, 2012; and (3) all contributions made to any escrow account pursuant to the agreement dated April 13, 2012 extending the *Amendment* from April 13, 2012 until June 11, 2012 or until a new collective bargaining agreement is ratified, whichever comes first.
>
> (aa) Notwithstanding anything to the contrary, should a contractor choose to participate in the Central States, Southeast and Southwest Areas Pension Plan, then contributions for both that contractors [sic] Travelers and local hands will be remitted to Central States.

(2012 Pipeline CBA at Sections V(I)(a)-(aa)) (emphasis in original).

Infrasource signed on to the 2012 Pipeline CBA. Specifically, on July 12, 2012, Infrasource signed an acceptance agreement (the "2012 Acceptance") by which it agreed "to accept and be bound by the terms and conditions of [the 2012 Pipeline CBA]." The same day, Infrasource also signed a participation agreement (the "2012 Participation Agreement") for the ERISA plans. The 2012 Participation Agreement did not specify whether Infrasource intended to participate in the Teamsters National Pipeline Pension Fund or the Central States Pension Fund for the term of the 2012 Pipeline CBA. Central States received copies of the 2012 Acceptance and the 2012 Participation Agreement on July 27, 2012. Infrasource never told Central States that it intended to continue to participate in the Central States Pension Fund.

During the time period between June 1, 2012 and the present, some of Infrasource's employees performed work covered by the various Pipeline CBAs. Since June 1, 2012, Infrasource has made *welfare* contributions to the Central States Health and Welfare Fund. Infrasource has not, however, made any *pension* contributions since June 1, 2012 to the Central States Pension Fund. Instead, since June 1, 2012, Infrasource has made its pension contributions to the Teamsters National Pipeline Pension Fund.

The parties agree about the consequences of this Court's ruling in this case. If the Court orders Infrasource to make contributions for its employees to the Central States Pension Fund for the period beginning June 1, 2012, then Central States will eventually pay those employees pensions based on the corresponding amount of service credits. If the Court does not order Infrasource to make contributions, Central States will not pay the relevant employees pensions based on their work on or after June 1, 2012.

II. **Summary Judgment Standards**

Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### III. <u>Discussion</u>

Section 515 of the Employee Retirement Income Security Act ("ERISA") provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. This provides trustees, who have standing to sue under ERISA, a right of action to enforce an employer's obligations to make pension contributions pursuant to a collective bargaining agreement (to which the trustees are not a party).

In this case, plaintiffs seek contributions from Infrasource for the time periods of June 1 through November 30, 2012 and March 1 through November 30, 2013. Plaintiffs seek these contributions *not* pursuant to the 2012 Pipeline CBA but rather pursuant to the 2005 Pipeline CBA. Central States' theory in this case is that Infrasource was required by the terms of the Trust Agreement to continue making contributions under the 2005 Pipeline CBA even after the

-7-

2012 Pipeline CBA had gone into effect, because Infrasource had not properly notified Central States about the existence of the 2012 Pipeline CBA. Infrasource's theory is that it was not bound by the Trust Agreement to continue contributing under the 2005 Pipeline Agreement.

Central States argue that Infrasource agreed to be bound by the Trust Agreement's language that "the obligation to make such contributions shall continue . . . after termination of the collective bargaining agreement until the date the Fund receives a) a signed contract that eliminates or reduces the duty to contribute to the Fund or b) . . . ." (Trust Agreement at 8). Central States argue that they did not receive proper notice until late 2013 that Infrasource was opting to contribute to the Teamsters National Pipeline Pension Fund, rather than to the Central States Pension Fund under the 2012 Pipeline CBA. Central States argue that because Infrasource did not provide sufficient notice for purposes of the Trust Agreement, Infrasource was required to continue contributing under the 2005 Pipeline CBA until late 2013. Central States' argument has a number of flaws.

The first flaw with Central States' argument is that the Trust Agreement, even if enforceable against Infrasource (more on that later), says the obligation to contribute continues "until the date the Fund receives a) a signed contract that eliminates or reduces the duty to contribute . . ." (Trust Agreement at 8). It is undisputed that, on July 27, 2012, Central States received a copy of Infrasource's 2012 Participation Agreement, by which Infrasource agreed to the 2012 Pipeline CBA. It is also clear from the 2012 Pipeline CBA that even though the 2012 Pipeline CBA allowed employers to "choose to participate in the Central States [Pension Fund]," the *default* rule was that "all pension contributions on behalf of the Travelers, shall be made to the Teamsters National Pipeline Pension Fund." (2012 Pipeline CBA at Sections V(I)(a)-(aa)).

Thus, when Central States received a signed copy of Infrasource's 2012 Participation Agreement, it received a contract that eliminated the duty to contribute. The notice requirement set out in the Trust Agreement was complied with no later than July 27, 2012.

The question remains whether Infrasource was bound by the notice requirement. The Court first notes that the notice requirement was *not* set out in the 2005 Participation Agreement, itself. That is what distinguishes this case from *Central States, SE & SW Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 673 (7th Cir. 2005) ("we hold that Trust Transport remained obligated to contribute to Central States' plan until it complied with the notice provision of the Participation Agreement."). Instead, the notice requirement was set out in the Trust Agreement. Had Infrasource agreed unconditionally to be bound by the Trust Agreement, the notice requirement would apply to it. *See Central States, SE & SW Areas Pension Fund v. Indy Transport, Inc.*, Case No. 06 C 4984, 2007 WL 734389 (N.D. Ill. March 6, 2007). What distinguishes this case from *Indy Transport*, however, is that Infrasource's consent to be bound by the Trust Agreement was conditional.

Central States argue that Infrasource was bound by the Trust Agreement, because Infrasource signed the 2005 Participation Agreement. That is nearly correct. The 2005 Participation Agreement, which Infrasource signed, states, "Employer hereby subscribes to the various agreements and declarations of trust and policies and procedures of the particular funds into which Employer will be required to make contributions pursuant to the [2005 Pipeline CBA], and agrees to be bound thereby." (2005 Participation Agreement). Infrasource's agreement to be bound by the Trust Agreement, however, is limited by the plain terms of the 2005 Participation Agreement, which goes on to state, "provided, however, that no . . .

provisions of said trust agreements shall bind the Employer for any financial obligations . . . beyond that set forth in the [2005 Pipeline CBA]."  (2005 Participation Agreement).  In other words, Infrasource is bound by the Trust Agreement, but not to the extent the Trust Agreement would subject it to financial obligations that are not set forth in the 2005 Pipeline CBA.  By requiring contributions beyond the expiration of the 2005 Pipeline CBA, the Trust Agreement would subject Infrasource to financial obligations outside of the 2005 Pipeline CBA.  Infrasource did not agree to that.

Accordingly, the Court concludes that Infrasource is not obligated to make pension contributions after the expiration of the 2005 Pipeline CBA.  The parties seem to agree that the 2005 Pipeline CBA expired when the 2012 Pipeline CBA was executed on May 31, 2012.  (Docket 38, Defendant's Brief at 12 (arguing its obligation to contribute "ceased upon the *execution* of the [2012 Pipeline CBA]"); Docket 41, Plaintiff's Brief at 3 (arguing that Infrasource's "duty to contribute continued after the May 31, 2012 expiration of the 2005 [Pipeline CBA]")).  In this lawsuit, plaintiffs seek contributions for the time period beginning June 1, 2012.  Because the Court has concluded that plaintiffs are not entitled to collect contributions after the May 31, 2012 expiration of the 2005 Pipeline CBA, defendant is entitled to judgment as a matter of law.  Defendant's motion for summary judgment is granted.  Plaintiffs' motion for summary judgment is denied.

The Court notes that this result happens also to be just.  Infrasource has already made pension contributions to the Teamsters National Pipeline Pension Fund for the covered work its employees performed after June 1, 2012.  Had the Court ruled in favor of Central States, Infrasource would have been forced to make those contributions twice (once to Teamsters

National Pipeline Pension Fund and once to Central States). The employees (who are not a party to this case), in turn, would have gotten a windfall in the form of double pension credits (once at Teamsters National Pipeline Pension Fund and once at Central States) for the same work. As for plaintiffs, they are no worse off. True, plaintiffs will not be collecting pension contributions for work performed by Infrasource employees after June 1, 2012, but they also will avoid the obligation to pay pension benefits for that work. All's well that ends well.

## IV. Conclusion

For the reasons set forth above, the Court grants defendant's motion for summary judgment and denies plaintiffs' motion summary judgment. Case terminated.

ENTER:

George M. Marovich
United States District Judge

DATED: March 30, 2015